## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| RICHARD HERSHEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 14-3375 |
| | ) | |
| COMMUNITY COLLEGE DISTRICT OF | ) | |
| CENTRAL SOUTHWEST MISSOURI, a.k.a | ) | |
| OZARKS TECHNICAL COMMUNITY | ) | |
| COLLEGE | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DR. JEFFREY JOCHEMS, | ) | |
| President of the Ozarks Technical Community | ) | |
| Community College, Richwood Valley | ) | |
| Campus, in his individual capacity | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROBIN RECTOR, | ) | |
| Vice Chancellor | ) | |
| for Administrative Services of the Ozarks | ) | |
| Technical Community College, in his | ) | |
| individual capacity | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT PURSUANT TO 42 U.S.C. SECTION 1983 FOR VIOLATION OF CIVIL RIGHTS PROTECTED BY THE FIRST AND AMENDMENT TO THE UNITED STATES CONSTITUTION**

1

**Preliminary Statement**

1. This is a civil rights action in which Plaintiff Richard Hershey seeks relief for violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C § 1983, and the First and Fourteenth Amendments to the United States Constitution. Plaintiff seeks declaratory and injunctive relief, damages, an award of costs and attorney's fees, and such other and further relief as this court deems just and fair.

**Jurisdiction**

2. This Court has jurisdiction as provided by 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 2201(a), this being an action seeking redress including declaratory relief, for the violation of Plaintiff's constitutional rights.

**Venue**

3. Venue is proper for the United States District Court, Western District of Missouri, as 28 U.S.C. § 1391(a), (b), and (c) provide.

**Parties**

4. Plaintiff Richard Hershey ("Hershey") is a citizen and resident of the United States, and at all relevant times, resided in the State of Missouri.

5. Hershey is a vegetarian advocate whose ethical beliefs compel him to share his message with others.

6. Hershey shares his message by distributing free, noncommercial educational literature and, where appropriate, offering personal screenings of short films on two 15.6" or 18.8" portable DVD players with audio headphones and privacy screens on behalf of various 501(c)(3) nonprofit organizations.

7. Hershey is compensated for time spent distributing literature and presenting videos, but only if he actually distributes literature or presents videos.

8. If Hershey fails to distribute literature or present videos, he is not compensated.

9. Defendant Community College District of Central Southwest Missouri ("OTC," "the College") is a community college that operates campuses in Springfield and Richwood Valley, and was established and is partially funded by Greene County.

10. Defendant Dr. Jeffrey Jochems (hereinafter "President Jochems") is currently the President of Ozarks Technical Community College ("OTC"), Richwood Valley Campus. At all relevant times, President Jochems acted as Assistant Vice President for Administrative Services at the OTC Springfield campus. At all relevant times, President Jochems acted under the color of law in the course and scope of his duties as duly appointed and acting policymaker, officer, servant, employee, and agent of OTC. President Jochems is named in his individual capacity.

11. Defendant Robin Rector (hereinafter "Vice Chancellor Rector") is the Vice Chancellor for Administrative Services of Ozarks Technical Community College. Vice Chancellor Rector acted at all relevant times under color of law in the course and scope

of his duties as a duly appointed and acting policymaker, officer, servant, employee, and agent of OTC. Defendant Rector is named in his individual capacity.

## Statement of Facts

### The September, 2009 Ejectment

12. On September 16, 2009, Hershey was lawfully on a public sidewalk near the intersection of Hampton Avenue and Brower Street on the OTC Springfield campus, distributing free educational booklets on behalf of Vegan Outreach.

13. This area is marked on the map of the OTC campus, Exhibit 2-A, attached hereto, and is depicted in photographs Exhibits 1-A, 1-B, 1-C, and 1-F, attached hereto.

14. The sidewalks and streets at the intersection of Hampton Avenue and Brower Street, including the location where Hershey was distributing his literature, are contiguous to and indistinguishable from surrounding city public streets and sidewalks. See exhibits 1-A through 1-F.

15. These sidewalks, and the sidewalk on which Hershey was distributing educational booklets, are in public areas of the OTC campus and constitute traditional public fora for the exercise of First Amendment privilege.

16. On September 16, 2009, while Hershey was lawfully on a public sidewalk near the intersection of Hampton Avenue and Brower Street an OTC campus security officer stopped him from leafleting, asserted that Hershey needed permission to leaflet there, and referred him to President Jochems.

17. Upon application to President Jochems for permission to leaflet, President Jochems denied Hershey permission to distribute literature anywhere on the OTC campus, explaining that OTC Policy 6.14, Exhibit 3-A, attached hereto, justified his decision.

18. Hershey reviewed the policy and objected to President Jochems that the policy violated his First Amendment protected rights. Hershey then left the OTC campus without distributing booklets.

**The 2011 Denials**

19. On March 17, 2011, Hershey petitioned Vice Chancellor Rector for permission to leaflet:

   a. In the Brower pedestrian plaza,

   b. At the intersection of Hampton & Brower, and

   c. Other areas with high student foot traffic.

   d. These areas are marked on Exhibit 2-B, attached hereto

   e. The intersection of Hampton and Brower is depicted in photographs Exhibits 1-A, 1-B, 1-C, and 1-F attached hereto.

20. On April 6, 2011, Vice Chancellor Rector denied Hershey permission to leaflet in these areas, citing OTC policy 6.14 to justify his decision.

21. On October 4, 2011, Hershey, through counsel, petitioned OTC for permission to distribute booklets on public areas of the OTC Springfield campus via formal application process. See Exhibit 6-A.

22. On October 17, 2011, Hershey received a response declaring that his application did not meet unconstitutional requirements, stating that therefore his application was voided. See Exhibit 6-B.

23. On October 28, 2011, Vice Chancellor Rector conditioned Hershey's distribution of literature anywhere on the OTC campus on his prior review and discretionary approval of their contents. See Exhibit 6-C.

24. On November 15, 2011, Vice Chancellor Rector denied Hershey permission to distribute literature on the OTC campus.

### The 2012 Denial

25. On March 3, 2012, Hershey petitioned Vice Chancellor Rector for permission to distribute literature and present videos from tables in the Norman K. Meyers building ("NKM building") lobby on May 10, 2012. This site is marked on the map of the OTC campus, Exhibit 2-C, and depicted in photographs Exhibits 1-O, 1-P, and 1-N.

26. On March 22, 2012, Vice Chancellor Rector asked Hershey to file with David Walker, scheduling coordinator for OTC, a Common Areas Form permit request per OTC policy 4.02(n). See Exhibit 4-A.

27. On May 7, 2012, Hershey filed a Common Areas Form permit request per OTC policy 4.02(n) for the locations he requested on March 3, 2012.

28. On May 7, 2012, David Walker represented that the NKM building lobby and Brower Plaza were available via permit to Hershey for distribution of literature.

29. On May 7, 2012, relying on that representation, Hershey travelled to Springfield, Missouri in order to show the educational video and distribute literature in the NKM building lobby and the Brower pedestrian plaza

30. On May 7, 2012, Vice Chancellor Rector denied Hershey permission to distribute literature from tables in the NKM building lobby or the Brower Plaza, stating in an e-mail dated Monday, May 7, 2012, 5:44 PM, attached hereto as Exhibit 4-B:

    a. "The interior common area locations that are highlighted in the email attachment, ("OTC Interior Maps"), are for providing information only to college employees which may be intended for or necessary to conduct college business, recognized student organizations for bringing groups on campus, four-year colleges and the military for setting up information tables, or vendors for participating in designated events as outlined in Ozarks Technical Community College Policy 6.14 Advertising and Solicitation. Consequently, the NKM lobby is not available for your use."

31. The NKM building lobby is open for the distribution of literature and other speech activities to representatives of four-year colleges, the military, student organizations, and other members of the public by discretionary ad-hoc determination of final policymaking officials and constitutes designated public forum.

32. On May 7, 2012, Vice Chancellor Rector granted Hershey permission to leaflet on an island in a parking lot on the OTC campus via e-mail. See Exhibit 4-B. That area is marked on the map of OTC campus, Exhibit 2-E.

33. On or about May 10, 2012, Hershey leafleted in this area on behalf of Vegan Outreach.

34. This area had no or nearly no student foot traffic, and as a result, Hershey failed to distribute any literature on behalf of Vegan Outreach.

7

35. Allowing Hershey to distribute literature on the parking lot island is not a constitutionally adequate substitute for allowing him to leaflet on other public areas of campus, or public areas of campus in general.

### The 2014 Denial

36. On September 29, 2014, Hershey petitioned Vice Chancellor Rector for permission to distribute literature on Oct. 1 & 2, 2014, at

    a. The Brower pedestrian plaza, and

    b. Sidewalks along Brower Street between Hampton and National.

    c. These areas are marked on the map of the OTC campus, Exhibit 2-D.

37. On September 30, 2014, Vice Chancellor Rector denied Hershey's request to leaflet the Brower pedestrian plaza, and conditioned Hershey's access to the sidewalks along Brower Street between Hampton and National on Hershey's compliance with unconstitutional OTC Policy 4.02(n).

### Hershey's Damages: Lost Income, Humiliation, and Incurred Expenses

38. As a result of Defendants' interference with Hershey's First-Amendment protected activities, he has lost income from, incurred travel and hotel expenses, and suffered humiliation and other compensable damages.

## Hershey's Future Plans to Engage in First Amendment Protected Activity at the OTC, Springfield campus and the OTC, Richwood Valley Campus

39. Hershey intends to return to the OTC, Springfield campus and leaflet in the following areas:

   a. The Brower pedestrian plaza,

   b. The NKM building lobby,

   c. The atrium of the Information Commons Building,

      i. This area is depicted in photographs Exhibits 1-G, 1-H, and 1-I.

      ii. OTC has opened the IC atrium to commercial speech, four-year colleges, the military, student organizations, and other members of the public by discretionary ad-hoc determination of final policymaking officials and constitutes designated public forum. See exhibits 1-G through 1-K.

   d. Sidewalks along Brower Street between Hampton and National, and

   e. Other sidewalks along non-vacated streets.

40. Hershey is prohibited from leafleting and engaging in other First Amendment protected speech activity because of the College's policies and the unconstitutional exercise of limitless discretion in permitting speech at the College by its final policymaking authorities.

41. Hershey additionally intends to leaflet, present videos, and otherwise engage in First Amendment protected speech activities at the OTC, Richwood Valley campus in the following areas:

9

a. Outdoor walkways on campus;

b. The indoor designated public forum as depicted in Exhibit 5-A.

**OTC's Unconstitutional Policies**

42. In denying Hershey permission to engage in First Amendment-protected activity, OTC and Vice Chancellor Rector relied on OTC policies 4.02(n) and 6.14.

43. A true and accurate copy of OTC Policy 6.14 is attached hereto as Exhibit 3-A.

44. A true and accurate copy of OTC Policy 4.02(n) is attached hereto as Exhibit 3-B.

45. OTC Policy 6.14(C) states "[a]ny person(s) desiring to post or distribute any commercial advertising, political or religious tracts or pamphlets on any campus or center is required to have the approval of the Vice Chancellor for Administrative Services."

46. OTC Policy 6.14(C) fails to specify any standards by which the Vice Chancellor shall approve permits for the distribution of political or religious literature, and vests absolute, standardless discretion in the Vice Chancellor for allowing the distribution of political or religious literature on campus.

47. Vice Chancellor Rector interpreted OTC Policy 6.14(C) as requiring Hershey's prior submission of literature for his review and approval.

48. OTC Policy 6.14(C) is facially unconstitutional, and unconstitutional as applied to Hershey.

49. OTC Policy 6.14(A) states in relevant part, "[t]his policy shall not prohibit educational vendors from providing information to College employees which may be intended for or necessary to conduct College business, recognized student organizations from bringing groups on campus, four-year colleges and the military from setting up information tables, or vendors from participating in designated events with approval from the appropriate staff."

50. OTC Policy 6.14(A) opens the OTC Springfield campus as a designated public forum.

51. OTC Policy 4.02(n)(C)(1)(b) states, "[s]pace will be made available to outside organizations other than for commercial solicitations when use does not conflict when [sic] scheduled College functions and if the activity is consistent with the objectives and philosophies of the College."

52. OTC Policy 4.02(n)(C)(1)(b) is an unconstitutional viewpoint restriction on speech.

53. OTC Policy 4.02(n)(C)(6) states in relevant part, "[a]t the discretion of the College, a certificate of general liability insurance may be required naming OTC as an additional named insured with minimum limits of liability in the amount of $1,000,000 and $3,000,000 per occurrence. In certain instances, OTC may require proof of additional insurance as necessary for a unique situation, and User agrees to comply with

11
Case 6:14-cv-03375-DGK   Document 13   Filed 02/06/15   Page 11 of 17

this request. A certificate evidencing such general liability insurance, and any other applicable insurance shall be furnished to OTC prior to use of the facility or ground."

54. OTC Policy 4.02(n)(C)(6) fails to specify any standards by which the OTC may require a speaker to take out general liability insurance in the amount of $1,000,000 or $3,000,000, and vests absolute, standardless discretion in OTC for requiring bond as a condition precedent for speech at the OTC Springfield campus.

55. OTC Policy 4.02(n)(C)(6)'s requirement of substantial bond as a condition precedent on speech at the OTC Springfield campus is a prior restraint on protected speech.

56. OTC Policy 4.02(n)(C)(6) is unconstitutional on its face, and as applied to Hershey.

**Attachments**

57. Exhibit 1-A is a photograph that truly and accurately depicts the sidewalk facing south at the southeast corner of the intersection of Hampton and Brower where Hershey was leafleting on September 16, 2009.

58. Exhibit 1-B is a photograph that truly and accurately depicts the sidewalks on the north and south sides of Brower.

59. Exhibit 1-C is a photograph that truly and accurately depicts the sidewalk on the south side of Brower between National and Hampton. Hershey leafleted at this location.

60. Exhibit 1-D is a photograph that truly and accurately depicts vacated and non-vacated sidewalks on the south side of Brower.

61. Exhibit 1-E is a photograph that truly and accurately depicts vacated and non-vacated sidewalks on the south side of Brower.

62. Exhibit 1-F is a photograph that truly and accurately depicts Brower facing west toward the intersection of Hampton and Brower.

63. Exhibit 1-G is a photograph that truly and accurately depicts the Atrium area of the Information Commons building with literature from various non-College groups posted on the walls and tables.

64. Exhibit 1-H is a photograph that truly and accurately depicts the Atrium area of the Information Commons building.

65. Exhibit 1-I is a photograph that truly and accurately depicts an information table with literature from various groups in the Atrium area of the Information Commons building.

66. Exhibit 1-J is a photograph that truly and accurately depicts non-College and other literature as it displayed on the table noted in Paragraph 65.

67. Exhibit 1-K is a photograph that truly and accurately depicts literature displayed on the table noted in Paragraph 65.

68. Exhibit 1-L is a photograph that truly and accurately depicts the parking lot where Defendants granted Hershey permission to leaflet on May 7, 2012.

69. Exhibit 1-M is a photograph that truly and accurately depicts the parking lot where Defendants granted Hershey permission to leaflet on May 7, 2012.

70. Exhibit 1-N is a photograph that truly and accurately depicts information tables with various literature displayed in the lobby of the NKM building.

71. Exhibit 1-O is a photograph that truly and accurately depicts information tables with various literature displayed in the lobby of the NKM building.

72. Exhibit 1-P is a photograph that truly and accurately depicts information tables with various literature displayed in the lobby of the NKM building.

73. Exhibit 2-A is a true and accurate map of the OTC Springfield campus that marks the site of Hershey's 2009 leafleting.

74. Exhibit 2-B is a true and accurate map of the OTC Springfield campus that marks areas Hershey sought to leaflet in March 2011.

75. Exhibit 2-C is a true and accurate map of the OTC Springfield campus that marks the site of Hershey's 2012 request.

76. Exhibit 2-D is a true and accurate map of the OTC Springfield campus that marks the areas subject to Hershey's 2014 requests.

77. Exhibit 3-A is a true, accurate, and complete copy of OTC Policy 6.14.

78. Exhibit 3-B is a true, accurate, and complete copy of OTC Policy 4.02(n).

79. Exhibit 4-A is a true and accurate copy of the e-mail Vice Chancellor Rector sent Hershey on May 7, 2012 denying him use of the NKM building.

80. Exhibit 4-B is a true and accurate copy of the e-mail Vice Chancellor Rector sent Hershey on March 22, 2012, asking him to file a Common Areas Form permit request per OTC policy 4.02(n) with David Walker, scheduling coordinator for OTC.

81. Exhibit 5-A is a true and accurate map of an indoor area on the OTC Richwood Valley campus that OTC has opened for speech activities to four-year colleges, the military, and others by discretionary ad-hoc determination by OTC officials.

82. Exhibit 6-A is a true and accurate copy of Hershey's letter through counsel, petitioning OTC for permission to distribute booklets on public areas of the OTC Springfield campus via formal application process.

83. Exhibit 6-B is a true and accurate copy of OTC's response through counsel declaring that Hershey's application did not meet certain requirements, and stating that therefore his application was void.

84. Exhibit 6-C is a true and accurate copy of a letter from Vice Chancellor Rector, through counsel, that conditioned Hershey's distribution of literature anywhere on the OTC campus on Rector's prior review and discretionary approval of the literature's contents.

# PRAYER FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES PURSUANT TO THE 42 U.S.C. SECTION 1983 AND THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

85. Hershey proposed to conduct his speech activities on sidewalks which are traditional public fora for the conduct of speech activities in which Defendants are prohibited from limiting the exercise of Hershey's speech activities.

86. In the alternative, Defendants have opened these sidewalk areas to the public as a non-traditional public forum and Defendants' regulations restricting the

15

exercise of Hershey's speech are on their face constitutionally prohibited prior restraint, and constitutionally prohibited exercise of viewpoint and subject matter discrimination.

87. Additionally, Defendants have applied their regulations under color of state law in their official capacities in a manner that is arbitrary and capricious in that the decisions are constitutionally prohibited exercises of viewpoint and subject matter discrimination.

88. Additionally, Defendants' regulations and restrictions grant to Defendants' officials the unbridled discretion to enforce viewpoint and subject matter discrimination on an *ad hoc* basis.

89. President Jochems and Vice Chancellor Rector relied on unconstitutional policies to deny Hershey his constitutional rights.

90. President Jochems and Vice Chancellor Rector are final policymaking authorities for the College on the subject matter which affects Hershey's rights.

91. Without action by this Court, the denial of Hershey's First Amendment protected rights is capable of repetition in a manner that evades meaningful judicial review.

92. OTC Policies 6.14 and 4.02(n) are unconstitutional on their face and as applied to Hershey.

93. Plaintiff Hershey has a fair chance of prevailing on the merits of his claims, thus justifying a preliminary injunction in this matter. ("[D]istrict courts should still apply the familiar "fair chance of prevailing" test where a preliminary injunction is sought to enjoin something other than government action based on presumptively

reasoned democratic processes.")  *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008).

94. Without action by this Court, Hershey will continue to suffer irreparable harm by Defendants' interference with the exercise of his First Amendment rights.

95. No harm will be inflicted upon Defendants should a preliminary injunction issue.

96. The issuance of such a preliminary injunction is in the public interest.

**WHEREFORE**, Plaintiff Richard Hershey prays for declaratory judgment and injunctive relief, including a preliminary injunction against Defendant OTC, finding that the First and Fourteenth Amendments protect Hershey's right to engage in peaceable distribution of booklets in public areas of the OTC campus, further enjoining Defendant OTC from interfering with Plaintiff's exercise of those First Amendment Rights, for costs and attorney's fees pursuant to 42 U.S.C. § 1988, for money damages, and for such other and further relief as this Court deems just and fair.

Respectfully submitted,

**SCHWARTZ, HERMAN & DAVIDSON**

By:   /s/  Robert Herman
Robert Herman, Bar No. 32376MO
8820 Ladue Road, Suite 201
St. Louis, Missouri 63124
Ph:  (314) 862-0200
Fx:  (314) 862-3050
bherman@laduelaw.com
*Attorney for Plaintiff,* Richard Hershey